UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| DARTANYUS HARRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-00097-CMS |
| | ) | |
| BILL STANGE, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Petitioner Dartanyus Harris' Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). For the reasons stated below, the Petition is denied.

**BACKGROUND**

**I. Factual and Procedural Background**

On October 21, 2019, Petitioner was sentenced to twenty years' imprisonment for Assault in the First Degree and five years' imprisonment for Armed Criminal Action in the Circuit Court of Cape Girardeau County, Missouri. (Doc. 7-10 at 186).

On direct appeal, the Missouri Court of Appeals summarized the evidenced adduced at trial as follows:

> The State charged Harris with two counts of assault in the first degree, in violation of Section 565.050 and two associated counts of armed criminal action ("ACA"), in violation of Section 571.015, for shooting Nakaska Graham ("Victim") and for shooting at Buster Meehan, who was Victim's next-door neighbor ("Neighbor").
>
> Victim and Harris had been in an on-and-off relationship for twenty years and had two children together, who lived with Victim. At the time of the offense, Victim and Harris were not in a relationship; Harris wanted to be in a relationship, but Victim had expressed interest in exploring a relationship with another person. On the evening of May 19, 2017, Harris was waiting for Victim outside her house when she returned home, and convinced Victim to speak with him outside. Neighbor described this as an unfriendly conversation and asked Victim if she was okay; she

> responded she was not, and that she needed Harris to leave. Victim left towards Neighbor's house and Harris returned to his vehicle, which Neighbor described as a dark-colored Pontiac Grand Am or Grand Prix. Harris told Victim to come to his car, and she approached the open passenger window. Harris leaned across the passenger seat, began shooting in her direction, and Victim ran to Neighbor's house while Harris continued shooting. Once Victim was inside Neighbor's house, Neighbor called 911. Victim suffered gunshots to the chest and arm and related injuries, and Neighbor's house was damaged by bullets. Law enforcement officers recovered one .40 caliber shell casing from outside Neighbor's house.
>
> Shortly after midnight on the night of the shooting, Harris entered the Cape Girardeau Police Department lobby, intoxicated, and stated he heard the police were looking for him. That same night, after the shooting, a dark green Pontiac Grand Prix was recovered approximately one mile from the Cape Girardeau Police Department, and Missouri Department of Revenue documents showed Harris to be the registered owner of the vehicle. Law enforcement officers inspected the vehicle and collected eleven spent .40 caliber shell casings from it, nine of which were located on the front passenger seat. These shell casings had identical head stamps to the shell casing recovered from Neighbor's house, and a Missouri State Highway Patrol crime laboratory report confirmed that all the shell casings were fired from the same firearm. Victim identified the shooter both to Neighbor and responding law enforcement officers as the father of her children, and she identified Harris as the shooter to the detective who spoke with her in the hospital days after the shooting. Marlya Kelley ("Kelley"), another neighbor, observed the shooting, called 911 from inside her house, and identified the shooter as a black male on the call. Kelley testified she was able to clearly see the shooter and later identified Harris as the shooter from a photograph lineup.
>
> Harris did not testify or present evidence in his defense. After less than an hour of deliberation, the jury acquitted Harris of the two counts relating to Neighbor but found him guilty of first-degree assault and the associated ACA charge stemming from his actions towards Victim. After finding Harris to be a prior and persistent offender under Section 558.016, the trial court sentenced Harris to a total of twenty-five (25) years in the Missouri Department of Corrections.

(Doc. 7-10 at 597–99) (internal footnotes omitted).

In that direct appeal, Petitioner only raised two points alleging "the trial court plainly erred in allowing testimony regarding the contents of an evidentiary laboratory report . . . ." *Id.* at 597. Petitioner's two points were: "(1) the testimony was hearsay in that the report was not offered into evidence and (2) the testimony violated Harris's constitutional right to confrontation . . . [and the] testimony resulted in manifest injustice because it was the only physical evidence connecting

Harris to the crime." *Id.* The Missouri Court of Appeals affirmed the trial court's judgment, reasoning that Petitioner did not meet "his burden of demonstrating facially substantial grounds for believing the claimed error resulted in manifest injustice or a miscarriage of justice . . . ." *Id.*

Petitioner filed a Rule 29.15 motion for postconviction relief. (Doc. 7-11 at 2). There, Petitioner asserted four claims of ineffective assistance of counsel:

> (1) Trial Counsel was ineffective for failing to move to suppress and failing to object to the admission of Witness K's out-of-court and subsequent in-court identifications on the grounds the identifications were the result of unduly suggestive police procedures which created a substantial risk for misidentification, and therefore, unreliable, and because Witness K had seen Movant's mugshot on Facebook before being asked to view the photo lineup or identify Movant in court at a preliminary hearing; (2) Trial Counsel was ineffective for failing to object to Officer J's testimony regarding the contents of a certified lab report from the highway patrol crime lab comparing shell casings found in Movant's car to one found at the crime scene on the grounds the lab report and the contents constituted hearsay, and the State failed to lay a sufficient foundation for the admission of its contents, therefore prejudicing Movant because the shell casings were the only physical evidence tying him to the crime scene and the State used it to argue Movant was guilty; (3) Trial Counsel was ineffective for failing to properly impeach Victim with her prior inconsistent statements because she testified in a pretrial deposition that she did not know who shot her and the shooter could not have been Movant, but her trial testimony was that Movant shot her; and (4) Trial Counsel was ineffective for failing to properly investigate the conversation between Juror No. 22 and two individuals before the case was submitted to the jury because Juror No. 22 failed to disclose to the court that he made specific comments about the facts of the case and Movant's guilt and told the court he did not participate in the conversation, even though he was specifically asked about the conversation with the two men.

*Id.* at 5–6.

After an evidentiary hearing, the state postconviction motion court denied each claim. *Id.* at 6–10. In appealing the motion court's ruling, Petitioner raised the same four points, each "alleging the motion court erred in denying" his motion "because he proved by a preponderance of the evidence that he was deprived of his rights to due process of law and effective assistance of counsel . . . ." *Id.* at 11. Petitioner also claimed that, "but for Trial Counsel's ineffectiveness, there

[was] a reasonable probability that the outcome . . . would have been different." *Id.* at 11–12. The Missouri Court of Appeals affirmed the motion court's judgment in an unpublished opinion. *Id.* at 24.

Petitioner mailed a timely petition for a writ of habeas corpus (pursuant to 28 U.S.C. § 2254) to this Court on May 21, 2024. (Doc. 1). Petitioner raises six grounds for relief:

> (1) Petitioner's due process rights were violated because Officer Jensen's testimony regarding the contents of the certified lab report was admitted in error;
>
> (2) Petitioner's Sixth Amendment right to confrontation was violated because allowing Officer Jensen to testify regarding the contents of the lab report was error;
>
> (3) Petitioner's trial counsel was ineffective for failing to move to suppress Witness Kelley's out-of-court and subsequent in-court identifications and for failing to object to the admission of the identifications during trial;
>
> (4) Petitioner's trial counsel was ineffective for failing to object to Officer Jensen's testimony regarding the contents of the certified lab report;
>
> (5) Petitioner's trial counsel was ineffective for failing to properly impeach Witness Graham with her prior inconsistent statement; and
>
> (6) Petitioner's trial counsel was ineffective for failing to investigate the conversation between Juror No. 22 and two other individuals outside the courtroom.

(Doc. 1 at 11–18).

## LEGAL STANDARDS

### I. 28 U.S.C. § 2254

A federal judge may issue a writ of habeas corpus freeing a state inmate if the inmate is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act (AEDPA) constrains a federal court to "exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under AEDPA, a federal court shall not grant relief to a state inmate "with respect to any claim that was adjudicated on the merits" in the state court

proceedings unless the state court's adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). And a "decision is 'contrary to' federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013) (quoting *Williams*, 529 U.S. at 412–13) (citation modified).

The "unreasonable application" prong of § 2254(d) is "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). An "*unreasonable* application of federal law is different than an *incorrect* application of federal law." *Williams*, 529 U.S. at 365 (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Id.*

But before reaching the merits of a § 2254 habeas claim, "a federal court reviewing a state conviction . . . may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086–87 (8th Cir. 2012) (quoting *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009)). A "state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." *Gordon v. Arkansas*, 823 F.3d 1188, 1196 (8th Cir. 2016) (quoting *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004)). "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." *Marcyniuk v. Payne*, 39 F.4th 988, 995 (8th Cir. 2022) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). "If a prisoner fails to demonstrate cause, the court need not address prejudice." *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) (citing *Mathenia v. Delo*, 99 F.3d 1476, 1481 (8th Cir. 1996)).

## II. Ineffective Assistance of Counsel

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To demonstrate ineffective assistance of counsel, a petitioner must show that: (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687. To establish deficient performance, a petitioner must demonstrate that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential," and the petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689

(internal citations and quotations omitted). To show prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## DISCUSSION

### I. Grounds One and Two are Procedurally Defaulted.

In Missouri, "a claim [must] be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir.1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)); *see also* Mo. Sup. Ct. R. 29.15(a) ("This Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated.").

In Grounds One and Two, Petitioner claims his due process and confrontation rights were violated by the admission at trial of Officer Jensen's testimony regarding the certified lab test results. (Doc. 1 at 11–12). But Petitioner's bases for Grounds One and Two were not preserved for appellate review because he did not object at trial or raise them in his motion for new trial. *See* (Doc. 7-10 at 749 n.3). The Missouri Court of Appeals declined to review Petitioner's defaulted points for plain error. *See Johnston v. Bowersox*, 119 F. Supp. 2d 971, 979 (E.D. Mo. 2000) ("Where the state court *declines* to conduct plain error review of a defaulted point, the procedural bar must remain intact."). Also, Petitioner does not allege or meet the strict standards for "cause, prejudice, or actual innocence . . . ." *Gordon*, 823 F.3d at 1196. Thus, Grounds One and Two are procedurally defaulted. *See Jolly*, 28 F.3d at 53.

## II. The Missouri Court of Appeals' Merits Determinations of Grounds Three Through Six Were Not Unreasonable.

In Grounds Three through Six, Petitioner alleges ineffective assistance of counsel. When applying the first prong of the *Strickland* test for ineffective assistance of counsel, the Court must analyze the alleged ineffective assistance without being influenced by hindsight. *Strickland*, 466 U.S. at 689. The Court must recognize that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 690. In applying the second, prejudice prong of the *Strickland* test, "a court making the prejudice inquiry must ask if the [petitioner] has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Id.* The failure to establish either *Strickland* prong defeats a claim of ineffective assistance of counsel. *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

Review is even more exacting in the context of a Section 2254 petition. *See Harrington*, 562 U.S. at 105. The *Strickland* and AEDPA standards are "highly deferential"; "when the two apply in tandem, the review is 'doubly' so." *Id.* (internal citations omitted). Therefore, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### A. Ground Three

In Ground Three, Petitioner alleges his trial counsel was ineffective for failing to move to suppress Witness Kelley's out-of-court and subsequent in-court identifications and for failing to object to the admission of the identifications during trial. (Doc. 1 at 12–13). Specifically, Petitioner claims the "identifications were the result of unnecessarily suggestive police procedures which created a substantial risk for misidentification." *Id.* at 14.

In denying Petitioner's third ground, the Missouri Court of Appeals stated, "Trial Counsel testified at the evidentiary hearing that he did not attempt to suppress . . . because he did not believe police did anything wrong. Instead, his strategy was to . . . show [the witness's] lack of credibility." (Doc. 7-11 at 15). The court found that trial counsel had considered his strategy and Petitioner failed to demonstrate it was "anything but sound trial strategy." *Id.* at 17.

As the Missouri Court of Appeals put it, there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Thus, Ground Three is denied. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]").

**B. Ground Four**

In Ground Four, Petitioner alleges his trial counsel was ineffective for failing to object to Officer Jensen's testimony. (Doc. 1 at 14–15). Specifically, Petitioner claims his trial counsel's failure to object prejudiced him because "the shell casing found in his car was the only physical evidence tying him to the crime scene and the State used this evidence to argue to the jury that Petitioner was guilty of the charged crime." *Id.*

Trial counsel testified at the evidentiary hearing that he stipulated to the admission of the lab report because he did not want to bolster the scientific aspects of the State's case by having the reporting lab technician testify at trial. (Doc. 7-11 at 16). The Missouri Court of Appeals found that Petitioner "did not demonstrate by a preponderance of the evidence that Trial Counsel's thought-out plan to steer clear of the scientific aspects of the case was anything but sound trial strategy" and that Petitioner "did not even allege that the lab report was inaccurate or otherwise would have cast doubt on his guilt." *Id.* at 17. The court further reasoned that Petitioner "cannot prove he was prejudiced" because "the overwhelming evidence of guilt in the case is strong enough

that the outcome of the trial would not have changed." *Id.* at 17–18. The court pointed out that both Witness Graham and Witness Kelley identified Petitioner. *Id.* at 18.

Again, there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Counsel's decision not to object to testimony to avoid bringing attention to an issue may be sound trial strategy. *See Jenner v. Class*, 79 F.3d 736, 740 (8th Cir. 1996). Thus, Ground Four is denied.

**C. Ground Five**

In Ground Five, Petitioner alleges trial counsel was ineffective for failing to properly impeach Witness Graham with her prior inconsistent statement. (Doc. 1 at 17). Specifically, Petitioner claims that his counsel should have cross-examined Witness Graham about her preliminary hearing testimony. *Id.*

As the Missouri Court of Appeals stated in denying Petitioner's claim, "Trial Counsel said he did not cross-examine [Witness Graham] about her preliminary hearing testimony at trial because he did not want to give her an opportunity to defend or justify responses that were inconsistent with her statements in court" and that he "had already brought up her inconsistent statement" but chose not to ask about the "inconsistent statement from the preliminary hearing because he did not want 'to belabor the point'" and wanted to avoid causing "more harm than good." (Doc. 7-11 at 19–20).

It is well established that counsel's opting not to inquire about inconsistent testimony when it would be cumulative or would belabor the point is not prejudicial. *See Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006). Therefore, there is a reasonable argument that counsel satisfied *Strickland*, and the Missouri Court of Appeals did not err in its denial of Petitioner's claim. Ground Five is denied.

**D. Ground Six**

Finally, in Ground Six, Petitioner claims his counsel was ineffective for failing to investigate the conversation among a juror and two individuals. (Doc. 1 at 18). Specifically, Petitioner claims "Juror Mitchell failed to disclose to the court that he made specific comments about the facts of the case and petitioner's guilt when talking to . . . two individuals" who approached him in the bathroom. *Id.* Another juror "informed the court that he noticed" Juror Mitchell "talking to two members of" Petitioner's family. *Id.*

The Missouri Court of Appeals held that trial counsel's lack of investigation was objectively reasonable. (Doc. 7-11 at 23). The court reasoned that Petitioner "had been adamant about going to trial on that day, and any further investigation would have likely delayed the trial." *Id.* Also, Petitioner "claimed to know" the individuals but "did not disclose their identity to Trial Counsel at trial because he was mad at them . . . ." *Id.* Petitioner failed to show any reasonable steps "Trial Counsel should have taken . . . and that it would have resulted in the discovery of the juror's alleged statements . . . ." *Id.* Further, the motion court found the juror's testimony denying the conversation credible. *Id.* at 24.

The record supports the motion court's decision, and it is not this Court's role to re-weigh the credibility of witnesses who testified in state court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.") In any event, Petitioner has failed to show any prejudice from trial counsel's failure to investigate the conversation. *See Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995) (petitioner must show actual bias). Thus, Ground Six is denied.

## III. Certificate of Appealability

The Court has considered whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court"). To issue such a certificate, the Court must find a substantial showing of the denial of a federal right. *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Petitioner has not made such a showing, and the Court will not issue a certificate of appealability.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), is **DENIED**.

**IT IS FINALLY ORDERED** that the Court will not issue a certificate of appealability.

The Clerk of Court is directed to close this case.

So ordered this 22nd day of October 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE